FILED

MAY 1 3 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DOCTORS FOR A HEALTHY MONTANA, a Montana Independent Committee,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY FOX, in his official capacity as Attorney General of Montana; and JEFFREY MANGAN, in his official capacity as Montana Commissioner of Political Practices,<br><br>Defendant. | CV 20–46–M–DLC<br><br><br><br>ORDER |

Before the Court is the Motion for Preliminary Injunction of Plaintiff Doctors for a Healthy Montana (the "committee"). (Doc. 4.) The committee asks the Court to enjoin Defendants Attorney General Timothy Fox and Commissioner of Political Practices Jeff Mangan (collectively, the "State") from enforcing Montana Code Annotated § 13-37-210, which governs the naming of political action committees. The Court denies the motion on the grounds that Doctors for a Healthy Montana have failed to "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

1

## HISTORICAL & LEGAL BACKGROUND

Montana Code Annotated § 13-37-210 provides that a political committee must "name and identify itself in its organizational statement using a name or phrase: (i) that clearly identifies the economic or special interest, if identifiable, of a majority of its contributors; and (ii) if a majority of its contributors share a common employer, that identifies the employer." Mont. Code Ann. § 13-37-210(1)(a). A committee must then "label any media advertisement or other paid public statement it makes or causes to be made in support of or opposition to any candidate or ballot issue by printing or broadcasting its name." Mont. Code Ann. § 13-37-210(1)(b).

The statute was passed without opposition in 1985 as a "truth in labeling" measure (Doc. 9-1 at 6), designed to prevent political action committees from misleading the public about their economic and special interests. (Doc. 9-1 at 1, 11.) Speaking in favor of the measure, MontPIRG—the Montana Public Interest Research Group, a long-established group run by students at the University of Montana—gave examples of committees with names that disguised the economic interests of contributors. (Doc. 9-1 at 11–21.) For example, because "Citizens for Responsible Government" primarily comprised employees of the Montana Power Co., MontPIRG suggested that a more transparent name would be "Montana Power PAC." (Doc. 9-1 at 18.)

The legislation was introduced largely in response to a heated battle surrounding a 1984 ballot initiative authorizing and regulating denturity—the making and insertion of oral prosthetics by licensed non-dentists.[1] Dentists formed a majority of the contributors to five committees opposing the initiative. The names of two of the groups, Missoula Dental Laboratories Association and 4th District Dental Society PAC, would have survived under § 13-37-210. But three of the committees' names—Citizens against I-97, Montanans for Good Health, and Montanans for Seniors against I-97[2]—would not have. (Doc. 9-1 at 19.) Similarly, a majority denturist-funded group, Montanans for Freedom of Choice in DentalCare, bore a name that failed to disclose its contributors' shared profession. (Doc. 9-1 at 19.)

Although some lawmakers were concerned about the practicalities of enforcement, no one spoke against the measure, and the labeling act passed unanimously. (Doc. 9-1 at 9.) A bill was introduced in 2019 to repeal the statute,

---

[1] Bad blood between dentists and denturists extended well beyond the 1984 initiative. The initiative's passage and the ensuing enactment of the Freedom of Choice in Denture Services Act of 1984 led to a "long struggle between denturists and dentists[,] . . . well documented in the annals of the legislative, executive, and judicial branches of Montana government." *Wiser v. Mont. Dep't of Commerce*, 129 P.3d 133, 136 (Mont. 2006).

[2] The Montana Senior Citizens Association was keenly outraged by this entity's name. A representative remarked in support of § 13-37-210 that "since the seniors in this state were one of the driving forces in support of the so-called Denturist Initiative, one might surmise that the name given to this dentist-supported PAC represented a deliberate effort to mislead the voters of Montana." (Doc. 9-1 at 24, 50.)

3

which Commissioner Mangan supported. (Doc. 4 at 22.) However, the bill did not pass, and § 13-37-210 remains law.

**FACTUAL BACKGROUND**

Doctors for a Healthy Montana was formed as an independent committee in February 2020. The committee advocates for the defeat of Republican state legislators who voted for Medicaid expansion. Doctors for a Healthy Montana reasons that because Medicaid covers medically necessary abortions in Montana, these Republican legislators supported increasing the number of abortions performed at taxpayer expense. (Doc. 1 at 2, 8, 9–11.)

Doctors for a Healthy Montana's largest expenditure to date is for the lease of a billboard in Sidney, Montana, opposing incumbent Republican Representative Joel Krautter of Montana House District 35. (Doc. 1-1.) The billboard features a photograph of a baby and reads: "Joel Krautter voted for taxpayer funded abortions. Email Joel.Krautter@mtleg.gov to ask WHY such a brazen voice against the voiceless." (Doc. 1-1.) The billboard also directs passersby to a website, www.montanafamily.org, for a "legal review" of the Medicaid expansion bill. In small print at the bottom of the billboard is the required disclosure of Doctors for a Healthy Montana's name and address. (Doc. 1-1.)

On April 8, 2020, Representative Krautter filed a complaint with the Commissioner of Political Practices, Jeff Mangan, alleging that Doctors for a

4

Healthy Montana "has violated Montana law code section § 13-37-210(a)(i), MCA, by using a name which fails to identify the economic or special interest of a majority of its contributors." (Doc. 1-5.) Citing what was then the committee's most recent finance report, Krautter noted the existence of only four contributors, only one of whom (Bukacek) "is a doctor; all of the others are politicians." (Doc. 1-5.)[3] Commissioner Mangan issued a letter to the committee shortly thereafter, informing it of the complaint, requesting a response, and stating his intent to further investigate the facts relevant to the complaint. (Doc. 1-6.) By all accounts, that investigation remains ongoing. (*See* Doc. 14 at 3–4.)

The membership of the committee has changed since this lawsuit was filed in early April 2020, and the State recognizes that Doctors for a Healthy Montana is now in compliance with § 13-37-210. The committee has received contributions from a total of eight individuals, four of whom are doctors.[4] (Doc. 14-1 at 6–11.) The three state legislators who were founding members, Representatives Dan

---

[3] Representative Krautter further alleges that the committee's name is misleading because "there is nothing 'healthy' about terminating health insurance for 80,000 people in the middle of the COVID-19 pandemic and taking actions which could result in the closure of our rural hospitals." (Doc. 1-5.) Regardless of the merits of Rep. Krautter's argument, this aspect of the name does not appear to be inconsistent with § 13-37-210, and it is not at issue in this litigation.

[4] Because there is unanimity on this issue, the Court does not press it, but it notes that it counts three doctors (one of whom uses the title "Dr." and lists her profession as physical therapist), rather than four, as Dr. Bukacek made contributions during both reporting periods. And it notes that under either count, doctors would not, as the State writes, compose a "majority" of the group's members. (Doc. 14 at 2.) Further, the Court is unsure of the state's reading of the statute as requiring individuals to identify a shared profession, even when they do not share a common employer. *See* Mont. Code Ann. § 13-37-210. However, these points of uncertainty drive home the necessity of a fully developed record.

5

Bartel and Matt Regier and Senator Keith Regier, have made contributions between $700 and $2,000, for a total of $3,600. The primary contributor is Kalispell doctor Ann Bukacek, who has individually given $4,100. The three remaining contributors have given a total of $135.00.

According to its most recent finance report, the committee made eight expenditures during the reporting period beginning March 26, 2020 and ending on April 25, 2020. (Doc. 14-1 at 9–11.) With the exception of one $100 Facebook ad supporting a pro-life incumbent, all expenditures were made in opposition to legislators who voted for Medicaid expansion. (Doc. 14-1 at 6–11.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 55 U.S. at 24. "[It] is not a preliminary adjudication on the ultimate merits" but rather "an equitable device for preserving rights pending final resolution of the dispute." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). Thus, a "district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Id.*

## DISCUSSION

Doctors for a Healthy Montana moved for a preliminary injunction on April 15, 2020, the day after it opened this case. It seeks relief on or before May 15,

6

2020, arguing that § 13-37-210 is unconstitutional and that the statute's continued enforcement will chill the committee's speech leading up Montana's June 2, 2020 primary.

While researching the motion, the Court became aware that additional individuals had made contributions to the committee after this lawsuit was filed, and it ordered the parties to brief the issues arising from this change. (Doc. 11.) In response to that Order, the parties addressed whether, given Doctors for a Healthy Montana's ostensible compliance with § 13-37-210: (1) a case or controversy exists; (2) the Plaintiff has standing to challenge the statute; and (3) any other issue prevents this Court from exercising jurisdiction over this matter. (Docs. 14 & 15.)

The Court now concludes that, despite the change in membership, jurisdiction exists. However, it also determines that the committee's compliance with the challenged statute requires the Court to deny the motion for a preliminary injunction.

## I. Jurisdiction

Doctors for a Healthy Montana has standing to challenge § 13-37-210, and the matter is ripe for decision. "'The party invoking federal jurisdiction bears the burden of establishing' standing." (*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a

sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*. 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 504 U.S. at 560–61).

The question here, relevant to both standing and ripeness,[5] is whether the committee has suffered an "injury in fact" or such injury is sufficiently certain. The State concedes that "the Committee's current compliance with Mont. Code Ann. § 13-37-210 does not resolve the pending campaign finance complaint before the Commissioner of Political Practices, and if the Committee's name was improper when it engaged in past political advertisements, the Commissioner will likely seek a civil penalty." (Doc. 14 at 3.) The issue, then, is whether a pending investigation for a prior violation constitutes an injury in fact.

"Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to . . . exercis[ing] . . jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). Here, there is no dispute that causation and

---

[5] As is often the case, here "ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

8

redressibility are satisfied, as the Committee's injury, if sufficient, can be traced directly to the statute and its enforcement.

"While a generalized possibility of prosecution does not satisfy the ripeness requirement, a genuine threat of imminent prosecution does." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019). "In evaluating the genuineness of a claimed threat of prosecution, [courts] look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139 (quoting *San Diego Cty. Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996)).

Doctors for a Healthy Montana faces a genuine threat of imminent prosecution. In this instance, the committee did more than "articulate a concrete plan to violate the law"—it "actually engaged in the illegal behavior at issue" when it paid for political advertisements using a name out of compliance with § 13-37-210. *Jacobus*, 338 F.3d at 1105. The Commissioner has done more than specifically threat[ened] to initiate proceedings"—he has, in fact, done so. *Thomas*, 220 F.3d at 1139. And there is a demonstrated "history of past

9

prosecution"; the State notes that the "Commissioner has no statutory discretion to ignore or excuse violations," and so the Commissioner has prosecuted prior violations of the statute. (Doc. 14 at 4.)

As this Court ruled in *National Association for Gun Rights, Inc. v. Motl*, 188 F. Supp. 3d 1020, 1027, 1033–34 (D. Mont. May 23, 2016), the threat of an injury-in-fact is sufficiently real when the Commissioner gives notice of a current investigation into a potential violation of election law. Here, as there, the committee has standing to question the constitutionality of § 13-37-210, and that controversy is ripe.

However, the Court notes that if it were not for the investigation into the committee's prior expenditures, the analysis would be different. The committee goes on to argue that it is refraining from seeking contributions from sympathetic legislators," "[m]any [of whom] would likely contribute." (Doc. 15 at 9.) The Court disagrees that this would be sufficient on its own, as "the mere existence of statute can[not] create a constitutionally sufficient direct injury"—"[a] general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. The committee could solicit contributions from additional members and not run afoul of the statute. The Court cannot find standing on the basis of a refusal to do something that is permitted under the challenged law.

10

## II. Preliminary Injunction

"To warrant a preliminary injunction, [a plaintiff] must demonstrate that it meets all four of the elements of the preliminary injunction test . . . ." *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). "[It] must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Here, Doctors for a Healthy Montana is not entitled to the "extraordinary remedy" of a preliminary injunction because it cannot show that imminent relief is necessary— or, in fact, that a preliminary injunction would have any effect whatsoever.

In their briefs, the parties primarily debate the likelihood of success on the merits. However, there is no need to address this element, as "[e]ven where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he 'must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction . . . ." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009)), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Trust*, 941 F.3d 1195.

If Doctors for a Healthy Montana's membership had not changed, it would likely be able to show the likelihood of irreparable harm. In support of its motion,

11

Doctors for a Healthy Montana argued that "[t]he threat of enforcement . . . is chilling core First Amendment speech that [it] desires to make." (Doc. 4 at 17.) "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976). "The harm is particularly irreparable where . . . a plaintiff seeks to engage in political speech, as timing is of the essence in politics and [a] delay of even a day or two may be intolerable." *Thalheimer*, 645 F.3d at 1128.

However, the State agrees that the group is now operating in compliance with § 13-37-210, and—as addressed above—the harm the committee now claims to face is too attenuated to factor into the Court's analysis. *See supra* p. 10. Thus, while the State will still seek to prosecute Doctors for a Healthy Montana's potential noncompliance with the statute when the group made prior expenditures, it does not anticipate future prosecution. Today, nothing prevents the group from broadcasting its views and attributing them to "Doctors for a Healthy Montana."

As for the threat of continued prosecution for the entity's prior political speech, Doctors for a Healthy Montana will be in the same position with or without an injunction. The only conceivable benefit would be a forecast of the Court's view of the merits of this case, but that view would necessarily be developed on a limited record and offered without the full consideration that this matter deserves. *See, e.g., Dish Network*, 636 F.3d at 1143–44.

"[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *O'Shea v. Littleton*, 414 U.S. 488 (1974). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunction as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Under the circumstances, it would be an act of judicial overreach to grant the Plaintiff the remedy it seeks.

Accordingly, IT IS ORDERED that Plaintiff Doctors for a Healthy Montana's motion for a preliminary injunction (Doc. 3) is DENIED.

DATED this 13th day of May, 2020.

Dana L. Christensen, District Judge
United States District Court